IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.                                                    Criminal No. 23-233

TAJAY SINGH

## SENTENCING MEMORANDUM

AND NOW comes the United States of America by its attorneys, Troy Rivetti, United States Attorney for the Western District of Pennsylvania, and Jeffrey R. Bengel, Assistant United States Attorney for said district, and respectfully files this sentencing memorandum.

## FACTUAL BACKGROUND

### The Lottery Scam Conspiracy

The defendant, Tajay Singh, was part of an organized, international conspiracy to target elderly victims in the United States with a lottery scam, then launder the proceeds. The conspirators' first step was often to acquire "leads" spreadsheets, which contained the names, addresses, and phone numbers of hundreds of individuals in the United States. The individuals listed on these spreadsheets had been specifically selected for their age. As one member of the conspiracy wrote while negotiating the purchase of such a spreadsheet: "I don't want any young persons like the ones you sent the last time . . . 75 and over." Once the conspirators were in possession of these leads, they began contacting the victims in furtherance of the conspiracy. They falsely told the victims that they had won a lottery sweepstakes, usually totaling millions of dollars and including a new car. But, the conspirators continued, in order to claim the prize, the victim would have to pay some taxes and fees up front. The conspirators reinforced these claims by sending winnings documents, designed to look like those that a winner might receive from a real

1

lottery. Many of these documents bore the seals of government agencies, to help convince the victims of their legitimacy.

For the many of the targeted seniors, these calls began a period of confusion, fear, and victimization that lasted months and sometimes years. The conspirators called victims repeatedly, telling various lies about why their sweepstakes prize could not be released until additional money had been paid. They sometimes impersonated lawyers, accountants, and federal agents. Sometimes victims were manipulated into receiving money from other victims and transferring it to members of the conspiracy, thus helping the very individuals who were defrauding them. As part of their investigation, agents have interviewed victims who lost hundreds of thousands of dollars to the scheme, sold their homes, and took other drastic financial steps—all in an attempt to satisfy the conspirators and obtain sweepstakes winnings that did not exist. Much of this money was laundered through a complex web of victims, money mules, and bank accounts, before arriving in the pockets of the conspirators, several of whom were located abroad in Jamaica.

This case began with L.D., a local widow and retired teacher in her 80s who lost her life's savings to the lottery scam. Agents identified another victim to whom she had sent money, and an email address—tpickenstine@gmail.com, now linked to charged co-conspirator Jason Plummer— that had been used to contact that victim. When they obtained a federal search warrant for that email account, agents found significant evidence of the lottery scam, materials used to victimize L.D., and communications with other email accounts involved in the fraud. Over the course of two years, agents have been expanding the investigation by searching criminal email accounts, working to attribute them to members of the conspiracy, analyzing financial records, and identifying new victims. As of March 2025, the investigation has identified more than 30 victims throughout the United States with a combined approximate loss of more than $4.5 million. It has

2

also led to the indictment of twelve conspirators. Three of those individuals—Jason Plummer, Troy Williams, and the defendant, Tajay Singh—were arrested in Jamaica and waived extradition to the United States. *See* Criminal Case Nos. 23-147, 23-234, and 23-233. Another, Javoye Richardson, was arrested at the St. Louis airport while traveling from Jamaica to the United States. *See* Criminal Case No. 25-81. The remaining conspirators—Clevon McKenzie; Tashane Murray; Daneil Reid; Gyzell Byfield; Yonel Burnett; Nicole Lamont; Shemeca Shields; and Omar McKenzie—were arrested in the United States. *See* Criminal Case Nos. 23-231, 25-76, and 25-80.

Tajay Singh's Participation in the Lottery Scam

As part of the investigation, agents identified a suspect email account, dave.green4248@gmail.com. In the associated Google drive, they found a photograph of a notebook page that included detailed biographical information about L.D.—including her name, birthday, social security number, mother's maiden name, and bank account information. The drive also included images depicting financial transactions in the name of L.D., and emails directly to her in furtherance of the scheme. *See* Exhibit A at 1. Other emails included spreadsheets of "leads"—essentially information about individuals who could be contacted as part of the scheme. References to L.D. also appear in an account in the name of defendant himself, tajaysingh4248@gmail.com. In an undelivered email, Singh purported to send L.D. a photograph of a bag of cash. *See* Exhibit A at 2. Around the same time, Google accounts linked to Singh included searches for L.D., for her home address, and for the query "U.S. Postal Inspectors cracking down on Jamaican lottery scams." Singh has pled guilty to conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 1349, and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). His applicable guideline range is 51 to 63 months of

imprisonment.

<strong><u>ARGUMENT</u></strong>

The Court shall impose a sentence sufficient but not greater than necessary to comply with the purposes set forth by Congress in 18 U.S.C. § 3553(a). The government submits that the stipulated sentence—54 months of imprisonment and one year of supervised release—is sufficient to achieve those purposes.

First, the Court's sentence must account for the seriousness of, and provide just punishment for, the offense. The lottery scam in which Singh participated was designed to steal huge amounts of money from elderly victims, who were selected *because* they were elderly and vulnerable. It was also designed to use emotional manipulation—confusion, false hope, and fear—to induce the victims to pay. Anyone who has seen the winning documents and documents threatening law enforcement action would be aware of the serious emotional and financial harms wreaked upon the victims by this scheme. There is nothing redeeming about the conspirators' conduct in this case, which was motivated solely by greed. This is a serious offense that warrants a serious punishment. A sentence that is not sufficiently serious to reflect the brazenness of defendant's conduct risks undermining respect for the law.

Second, and relatedly, the sentence in this case should afford adequate deterrence to criminal conduct. Every participant in the conspiracy attempted to hide behind various aliases and anonymous email accounts while committing their crimes. Many individuals who receive money stolen from victims attempt to deny knowing of its origin, or about the nature of the scheme that has defrauded them. The sentences in this should be serious enough to deter individuals who calculate that they could make money through elder fraud but escape punishment by evading detection or by claiming ignorance about the nature of their actions. Individuals considering this type of conduct must understand that the legal consequences if caught are not worth the risk. A

4

sentence at the top of the Guideline range sends that message with respect to the serious criminal conduct in this case.

Respectfully submitted,

TROY RIVETTI
United States Attorney

*s/Jeffrey R. Bengel*
JEFFREY R. BENGEL
Assistant U.S. Attorney
DC ID No. 1018621